**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00839-STV

SUSAN ULLERY,

     Plaintiff,

v.

RICK RAEMISCH, in his official capacity;
DAVID JOHNSON, in his individual and official capacities;
TERRY JAQUES, in his individual and official capacities;
BRUCE BRADLEY, in his individual and official capacities;
DAVID WANG, in his individual and official capacities;
DAVID URICH, in his individual and official capacities;
RAMONA AVANT, in her individual and official capacities;
SCOTT SMITH, in his individual and official capacities; and
DANNY LAKE, in his individual and official capacities;

     Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

     This matter comes before the Court on Defendant Bruce Bradley's Motion to Dismiss Plaintiff's First Amended Complaint [#39] (the "Bradley Motion") and the Motion to Dismiss filed by Defendants Raemisch, Johnson, White, Wang, Urich, Avant, Smith and Lake [#40] (the "State's Motion"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#14, 29, 37, 38] This Court has carefully considered the motions and related briefing, oral argument held on January 10, 2019, the case file, and the applicable case law. For the following reasons, **IT IS ORDERED** that the Bradley

Motion is **GRANTED IN PART AND DENIED IN PART** and the State's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND[1]

Plaintiff is a former inmate of the Denver Women's Correctional Facility ("DWCF"), a facility within the Colorado Department of Corrections ("DOC").  [#22 at ¶¶ 1, 6-7]  In early 2014, Plaintiff began working in Canteen Services at DWCF.  [*Id.* at ¶ 19]  She was primarily responsible for assisting in loading and unloading goods from trucks at the facility's loading dock.  [*Id.*]  Defendant Correctional Support Trades Supervisor Bruce Bradley was Plaintiff's most senior supervisor at Canteen Services, though Defendants Correctional Officers David Wang and David Urich were also supervisors.  [*Id.* at ¶¶ 12, 20]

Plaintiff worked with three other female inmates.  [*Id.* at ¶ 19]  According to the Amended Complaint, shortly after Plaintiff began working at Canteen Services, Defendant Bradley began sexually harassing Plaintiff and the three other female inmates.  [*Id.* at ¶¶ 21, 24]  For instance, on one occasion, Defendant Bradley closely observed the inmates remove their boots and inquired whether the women took good care of their feet and painted their toenails.  [*Id.* at ¶ 25]  He told them to wear red nail polish because it was his favorite color.  [*Id.*]  In the following days, he repeatedly told them that it was time for a "pedi check."  [*Id.* at ¶ 26]  When the inmates refused to show him their toenails or did not paint their toenails, Defendant Bradley would behave rudely toward them.  [*Id.*]  Defendant Bradley also repeatedly told Plaintiff that his wife's feet

---

[1] The facts are drawn from the allegations in Plaintiff's First Amended Complaint and Jury Demand (the "Amended Complaint") [#22], which must be taken as true when considering a motion to dismiss.  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

"turned [him] on" and that he wanted Plaintiff to paint her toenails because that would sexually excite him. [*Id.* at ¶ 27] "Defendant Bradley's practice of sexually harassing the women he supervised became so pervasive that the women who worked on the dock made an agreement that if Defendant Bradley was ever seen talking to one of the women, another would join her so that she would not be left alone with him and thereby [become] vulnerable to his harassment." [*Id.* at ¶ 29]

Though Defendant Bradley sexually harassed all four women, he focused most of his harassment on Plaintiff. [*Id.* at ¶ 24] For example, on at least one occasion, Defendant Bradley told Plaintiff about a new sex toy that he had purchased to use with his wife. [*Id.* at ¶ 28] He also described to Plaintiff in graphic terms the sex acts that he performed with his wife. [*Id.*]

Approximately eight months after she began working in Canteen Services, Plaintiff and the other Canteen Services workers were tasked with performing inventory, which entailed tracking the goods in storage at DWCF. [*Id.* at ¶ 31] Defendant Bradley, who directly supervised this process, used this opportunity to increase his sexual harassment of Plaintiff. [*Id.* at ¶¶ 31-32] He repeatedly approached Plaintiff from behind and forcefully pressed his genitals into her buttocks, lasciviously moaning "mmmmmm" in Plaintiff's ear. [*Id.* at ¶¶ 32-33] In an attempt to escape Defendant Bradley's constant sexual harassment, Plaintiff told him that she was a lesbian. [*Id.* at ¶ 34] Defendant Bradley responded by discussing with Plaintiff the possibility of sexual encounters involving himself, Plaintiff, and another woman. [*Id.*]

Around October 2015, two of the four female inmates in Canteen Services were released from prison. [*Id.* at ¶ 35] Following those inmates' release, Defendant

Bradley's harassment of Plaintiff escalated. [*Id.* at ¶ 38] He began demanding that Plaintiff show him her breasts, and threatened her with punishment if she refused. [*Id.* at ¶¶ 38-39] Believing she had no choice, Plaintiff reluctantly showed Defendant Bradley her breasts. [*Id.* at ¶ 39]

On another occasion, Plaintiff was in Defendant Bradley's office shortly after she had been informed of the death of a family member. [*Id.* at ¶ 40] Defendant Bradley suggested that him "jacking off and [his] semen hitting [Plaintiff] in the face would make her feel better." [*Id.*] Defendant Bradley made similar comments on other occasions. For example, he told Plaintiff something to the effect of "you know I shoot porno loads" and that he wanted to have anal sex with Plaintiff. [*Id.* at ¶ 41] On yet another occasion, Defendant Bradley offered to allow Plaintiff to use his personal cell phone if she would masturbate for him—an offer Plaintiff refused. [*Id.* at ¶ 42] On what appears from the Amended Complaint to be a separate incident, Defendant Bradley told Plaintiff that if she did not masturbate for him, he would write her up for disobeying a lawful order, and that she would lose her parole. [*Id.* at ¶ 45] Plaintiff told Defendant Bradley that he was "fucking crazy" and then left his office. [*Id.*]

Plaintiff repeatedly complained to Defendants Wang and Urich that Defendant Bradley "was sexually harassing and scaring her." [*Id.* at ¶ 43] Moreover, Defendant Wang personally observed the incident where Defendant Bradley told Plaintiff that he would write her up if she did not masturbate for him. [*Id.* at ¶ 45] Defendants Wang and Urich neither documented nor stopped Defendant Bradley's behavior. [*Id.* at ¶ 44] Instead, they told her that "that's how he is" and to be "glad" that he "like[d] her." [*Id.*]

On one occasion, after she complained about Defendant Bradley, Defendant Wang told Plaintiff to put Defendant Bradley "in a good mood." [*Id.* at ¶ 44]

On or about April 15, 2016, Plaintiff met with Defendant Investigator Scott Smith from the DOC Office of the Inspector General ("OIG") about an unrelated issue. [*Id.* at ¶ 47] Plaintiff stated that she wanted to report an incident of staff misconduct and asked to meet with him another time. [*Id.*] Approximately four days later, Defendant Smith summoned Plaintiff to the administrative offices at DWCF. [*Id.* at ¶ 48] Defendants Captain Ramona Avant, Associate Warden Terry Jaques, and another OIG representative were also present at the meeting.[2] [*Id.*]

At the meeting, Plaintiff told the Investigators that her complaint was related to Defendant Bradley. [*Id.* at ¶ 49] The Investigators responded by saying something to the effect of "they had assumed as much." [*Id.*] The Investigators stated that DOC had received numerous complaints about Defendant Bradley sexually harassing or assaulting inmates over the ten years that Defendant Bradley had worked at DOC, but every time an investigation was launched, "it became a he said/she said situation." [*Id.*] The Investigators asserted that, as a result, DOC had no proof of Defendant Bradley's misconduct, though they made clear that they knew that Defendant Bradley had sexually harassed other inmates. [*Id.* at ¶¶ 49-50]

The Investigators told Plaintiff that they wanted hard evidence of Defendant Bradley's misconduct. [*Id.* at ¶ 50] Plaintiff offered to provide personal, sexual information about Defendant Bradley that she was aware of from his past harassment, such as the type of sex toy Defendant Bradley had given his wife. [*Id.*] The

---

[2] Defendants Smith, Avant, Jaques and the unnamed OIG representative are referred to collectively as the "Investigators."

Investigators believed that it would be too "awkward" to confirm such information, and instead asked her to wear a wire and record an act of misconduct by Defendant Bradley.  [*Id.* at ¶ 51]  Plaintiff initially refused to wear the wire, but after much persuasion and assurances by the Investigators that they would protect her from Defendant Bradley and any other potential negative consequences of the undercover operation, Plaintiff agreed.  [*Id.* at ¶¶ 52-56]  Defendant Smith briefed Defendant Chief Investigator Danny Lake about the operation, and Defendant Lake approved it and assisted in advising Defendant Smith on the technology to be used.  [*Id.* at ¶ 58]

On or around April 26, 2016, the Investigators fitted Plaintiff with a wire.  [*Id.* at ¶ 60]  Defendant Avant assisted Plaintiff to devise a cover to avoid the metal detector.  [*Id.*]  Plaintiff returned to her normal duties on the dock, with the wire active.  [*Id.* at ¶ 61]  Shortly thereafter, Defendant Bradley paged Plaintiff to his office.  [*Id.* at ¶ 63]  Defendant Bradley immediately started to harass Plaintiff and demanded that she show him her breasts.  [*Id.* at ¶ 64]  He began to chide Plaintiff for her reluctance to masturbate in front of him.  [*Id.* at ¶ 65]  When Plaintiff asked Defendant Bradley what was wrong with him, he became visibly angry.  [*Id.* at ¶¶ 66-67]  He stood up, backed her into a wall, and forcefully thrust his hand between her legs, groping her crotch.  [*Id.* at ¶ 67]  Plaintiff was left alone with Defendant Bradley for approximately three minutes after the assault began, at which point Sergeant Hall entered the office and removed Plaintiff.  [*Id.* at ¶¶ 68-69]

After Plaintiff was taken from the office and the wire was removed, she met with several of the Investigators.  [*Id.* at ¶ 71]  Plaintiff asked the Investigators why they had taken so long to take her out of Defendant Bradley's office.  [*Id.*]  The Investigators

explained that the device was not transmitting well initially. [*Id.*] In fact, the connection between the wire transmitting device and the listening device failed repeatedly, and Defendant Smith was unable to hear Plaintiff or anyone else throughout most of the wire operation. [*Id.* at ¶ 72] Despite this inability to hear Plaintiff, Defendant Smith allowed the operation to continue. [*Id.*]

The next day, Defendant Bradley was placed on administrative leave, and he would eventually resign in lieu of firing. [*Id.* at ¶ 75] Word quickly spread through DWCF that Plaintiff had worn a wire and caused Defendant Bradley to lose his job. [*Id.* at ¶ 76] Inmates who liked Defendant Bradley confronted Plaintiff and repeatedly threatened her with physical harm and even death. [*Id.* at ¶ 77] Plaintiff was forced to stop leaving her unit because she feared that she would be killed. [*Id.* at ¶ 79] She stopped sleeping out of fear of an attack, and, when she did sleep, she had horrific nightmares. [*Id.*] She was afraid to go to the food hall, and was left with no choice but to request solitary confinement so that she could eat. [*Id.* at ¶ 80] She sent out requests pleading for help, and her mother even called DOC asking to have Plaintiff transferred. [*Id.* at ¶ 81] Neither the Investigators nor anyone else addressed her concerns. [*Id.*]

Plaintiff was released from DWCF on June 24, 2016. [*Id.* at ¶ 83] Nonetheless, she continues to suffer from her experiences. [*Id.* at ¶¶ 84-88] She continues to have flashbacks of Defendant Bradley's sexual assault, and suffers from nightmares and night terrors related to his conduct. [*Id.* at ¶¶ 84-85] The trauma has impacted Plaintiff's relationship with her fiancé, and she feels humiliated and disgusted with herself. [*Id.* at ¶¶ 85-86]

Plaintiff is not the first inmate to suffer sexual harassment and assault by guards at DWCF. In 2009, a DWCF inmate was awarded $1.3 million in her lawsuit against a DWCF guard who repeatedly coerced her into performing sexual acts and subsequently raped her. [*Id.* at ¶ 89] The guard had a history of engaging in sexual misconduct with female inmates, a fact well known to prison officials. [*Id.*] As part of the settlement of the resulting lawsuit, DOC agreed to conduct supplemental annual training under the Prison Rape Elimination Act, focused on preventing DOC employee-on-inmate sexual contact. [*Id.* at ¶ 91] DOC also agreed to uphold a "zero-tolerance" policy for employee-on-inmate sexual contact, mandating that DOC employees report any information about such contact. [*Id.*]

Despite these agreements, in 2011 and 2012, DWCF had the highest rate in the country of alleged sexual assault or misconduct by correctional facility staff members against inmates. [*Id.* at ¶ 92] An estimated 10.7 percent of DWCF inmates claimed that they were victims of sexual assault or misconduct by staff members. [*Id.*] Of all DWCF inmates subjected to sexual misconduct by staff, 7.3 percent reported that they had been physically coerced or threatened with physical force, ten times higher than the national average. [*Id.*] Prison officials knew about the ongoing and pervasive sexual misconduct and abuse at DWCF. [*Id.* at ¶ 90]

Indeed, for ten years prior to Defendant Bradley's assault on Plaintiff, Prison officials knew that Defendant Bradley had been engaged in sexual misconduct with inmates. [*Id.* at ¶¶ 22-23, 94] Witnesses had observed Defendant Bradley sexually harassing female inmates as early as 2008, and DOC officials had received numerous complaints about Defendant Bradley sexually harassing or assaulting inmates. [*Id.*]

Though DOC had previously investigated Defendant Bradley for such conduct, DOC officials failed to take any significant action against him. [*Id.* at ¶¶ 23, 94]

On April 10, 2018, Plaintiff initiated the instant action. [#1] The Amended Complaint brings five claims for relief: (1) an Eighth Amendment excessive force claim against Defendant Rick Raemisch, DOC's Executive Director, and Defendants Bradley, Johnson, and Jaques [#22 at ¶¶ 98-116]; (2) a Fourteenth Amendment substantive due process claim for invasion of bodily integrity against Defendants Raemisch, Bradley, Johnson, and Jaques [*id.* at ¶¶ 117-131]; (3) a Fourteenth Amendment substantive due process claim for state-created danger against Defendants Jaques, Smith, Avant, and Lake [*id.* at ¶¶ 132-146]; (4) a First Amendment retaliation claim against Defendants Jaques, Smith, Avant, and Lake [*id.* at ¶¶ 147-156]; and (5) an Eighth Amendment failure to protect claim against Defendants Urich and Wang [*id.* at ¶¶ 157-168]. Plaintiff sued Defendant Raemisch in his official capacity, and all other Defendants in their individual and official capacities. [*See generally* #22] Defendants have moved to dismiss the Amended Complaint. [# 39, 40] Plaintiff responded to the Motions [#51], and Defendants have replied [# 60, 61].

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.  ANALYSIS

The State's Motion seeks to dismiss the official capacity claims because any damages claim is barred by the Eleventh Amendment and any claim for injunctive relief is moot.  [#40 at 4-6]  The State's Motion further argues that: (1) the Fourteenth Amendment does not apply to this case, because the Eighth Amendment covers all of Plaintiff's claims [*Id.* at 6-7]; (2) Defendants Johnson, Jaques, Lake, Urich, and Wang should be dismissed for lack of personal participation [*id.* at 8-12]; (3) Plaintiff fails to

state a First Amendment retaliation claim [*id.* at 13-15]; and (4) Defendants Johnson, Jaques, Wang, Urich, Avant, Smith, and Lake are entitled to qualified immunity [*id.* at 15-18]. The Bradley Motion argues that Defendant Bradley is entitled to qualified immunity [#39 at 4-10, 12-13] and that the substantive due process claim should be dismissed as redundant of the excessive force claim [*id.* at 10-12]. The Court addresses Defendants' arguments below.

### A. Official Capacity Claims

The State's Motion argues that the Eleventh Amendment bars Plaintiff's claims for damages against the Defendants in their official capacities, and that any claim for injunctive relief is moot now that Plaintiff has been released from custody. [#40 at 4-6] Plaintiff consents to the dismissal of her claims against Defendant Raemisch and of her claims against all other Defendants in their official capacities. [#51 at 4 n.2] Accordingly, the Court DISMISSES WITHOUT PREJUDICE all claims against Defendants in their official capacities and DISMISSES Defendant Raemisch as a Defendant in this matter. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (noting that dismissal based upon Eleventh Amendment immunity should be a dismissal without prejudice).

### B. Individual Capacity Claims

Each Defendant has raised the doctrine of qualified immunity as a bar to each of the individual capacity claims asserted against them. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

### 1. Claim One – Cruel and Unusual Punishment, Excessive Force in Violation of the Eighth Amendment

Claim One alleges an Eighth Amendment excessive force claim against Defendants Bradley, Johnson, and Jaques in their individual capacities, based upon Defendant Bradley's sexual assault of Plaintiff. [#22 at ¶¶ 98-116] Each Defendant argues that he is entitled to qualified immunity on Claim One. [#39 at 7-10; #40 at 15-18] Defendants Johnson and Jaques (the "Supervisory Defendants") also argue that Plaintiff has failed adequately to allege their personal participation in the sexual assault, and has therefore failed to allege a constitutional violation. [#40 at 8-12] The Court addresses each argument below.

### a. Defendant Bradley

### i. The Alleged Constitutional Violation[3]

The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). As part of this guarantee to humane conditions, the

---

[3] Although Defendant Bradley, for purposes of his motion, does not challenge the existence of the Eighth Amendment violation [#39 at 5], because the nature of that violation is relevant to both the clearly established prong of the qualified immunity analysis and the Supervisory Defendants' personal participation argument, the Court addresses Defendant Bradley's alleged Eighth Amendment violation below.

Eighth Amendment proscribes cruel and unusual punishment, which is defined as the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). The "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

Ordinarily, an excessive force claim involves two prongs. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). The "objective prong . . . asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). The subjective prong, on the other hand, requires "the plaintiff [to] show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original)

"The objective component of an excessive force claim is 'contextual and responsive to contemporary standards of decency.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The Tenth Circuit has explicitly held that "[s]exual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim." *Id.* Here, Plaintiff alleges that Defendant Bradley forced Plaintiff to expose her breasts to him and used physical force to touch her breasts. [#22 at ¶¶ 39, 100] In addition, Plaintiff alleges that Defendant Bradley repeatedly approached Plaintiff from behind and forcefully pressed his genitals into her buttocks. [*Id.* at ¶¶ 32-33, 100] Plaintiff further alleges that Defendant Bradley, in a fit of anger, backed Plaintiff against a wall and forcefully thrust his hand between her legs, groping her crotch for approximately three minutes. [*Id.* at ¶¶ 67, 100] The Court has no trouble concluding that such actions, if

13

true, are repugnant to contemporary standards of decency, and easily satisfy the objective prong of an Eighth Amendment excessive force claim.[4]

Turning to the subjective prong, the Amended Complaint makes clear that Defendant Bradley engaged in this conduct for his sexual gratification, as opposed to acting with a good-faith effort to maintain or restore discipline. [*See generally* #22] Indeed, as the Tenth Circuit has previously held, "[i]n cases of sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *Smith*, 339 F.3d at 1212-13 (quotations omitted). Accordingly, the Court concludes that Plaintiff has sufficiently alleged both prongs of an excessive force claim against Defendant Bradley.

### ii. Whether the Law Was Clearly Established

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia*

---

[4] In a footnote, Defendant Bradley argues that "[t]he first two allegations of physical activity [referring to Defendant Bradley touching Plaintiff's breasts and pressing his groin against her buttocks] should not be considered because of the two-year statute of limitations for claims under 42 U.S.C. § 1983." [#39 at 4 n.1] Defendant Bradley further contends that "[t]he original complaint was filed April 10, 2018 (Doc. 1), but these events appear from the complaint to have occurred in 2014 and 2015." [*Id.*] As the Tenth Circuit has explained, the assertion of the statute of limitations is an affirmative defense and "[a] plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Accordingly, although "on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense[,] . . . that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id.* Here, although the allegations in the Amended Complaint are sufficient to provide Defendants notice of the general timeframe in which the sexual assaults occurred, the Amended Complaint does not identify the specific dates on which each of the assaults occurred. Defendant Bradley's statute of limitations defense thus does not "appear[ ] plainly on the face of the complaint itself" and he is not entitled to dismissal at the pleadings stage. *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

*v. Wesby*, 138 S. Ct. 577, 589 (2018).  The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity."  *Id.* at 591 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'"  *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Wesby*, 138 S. Ct. at 590 (quotation omitted).  Nonetheless, the Supreme Court has made clear that it "do[es] not require a case directly on point, [provided] existing precedent . . . placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate.  The dispositive question is whether the violative nature of the *particular conduct* is clearly established . . . .  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted).

With these principles in mind, the Court turns to the alleged assaults underlying Claim One.  According to the Amended Complaint, Defendant Bradley committed three

separate acts of assault against Plaintiff by using physical force to: (1) touch Plaintiff's breasts, (2) press his groin against Plaintiff's buttocks, and (3) back Plaintiff against a wall and forcibly thrust his hand between her legs, groping her crotch for approximately three minutes.  [#22 at ¶¶ 32-33, 38-39, 67, 100]  As alleged, each of these assaults constitutes a felony under Colorado law.  *See* Colo. Rev. Stat §§ 18-3-401(4) (defining "sexual contact" to include "the knowing touching of the victim's intimate parts by the actor, . . . or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse");[5] 18-3-404(1)(a) (defining "unlawful sexual contact" to include subjecting a victim to sexual contact without the victim's consent); 18-3-404(2)(b) (declaring "unlawful sexual contact" a class 4 felony when the actor compels the victim to submit by the use of force defined in Colo. Rev. Stat. § 18-3-402(4)(a) (including the application of physical force or physical violence)).  Given that the Amended Complaint has alleged that Defendant Bradley engaged in felonious sexual activity, it seems absurd to argue that any "reasonable official" would have believed that his actions did not violate Plaintiff's rights.  *See Aldaba*, 844 F.3d at 877 ("Qualified immunity protects all but . . . those who knowingly violate the law").

Yet, Defendant Bradley makes this argument, and not without some support. Defendant Bradley generally acknowledges legal authority [#39 at 7], which demonstrates that, since at least 1998, the law in this Circuit has been clearly established that an inmate's "deprivations resulting from [] sexual assaults are

---

[5] The statute defines "intimate parts" to include "the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person."  Colo. Rev. Stat. § 18-3-401(2).

sufficiently serious to constitute a violation under the Eighth Amendment." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("There is no question that sexual assault of the kind suffered by [plaintiff] meets the objective component of an Eighth Amendment claim."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005) ("[A] plaintiff's uncontroverted claim of deprivations resulting from sexual assault are sufficiently serious to constitute a violation under the Eighth Amendment." (quotations omitted)). Nonetheless, Defendant Bradley argues that the law is not sufficiently clear that every reasonable officer would know that the specific conduct alleged here is unlawful. [#39 at 4-10] According to Defendant Bradley, Tenth Circuit precedent only establishes that "rape of a prisoner by a guard" constitutes an Eighth Amendment violation, and that such cases are not sufficiently particularized to define the right at issue in this case. [*Id.* at 7]

The Court disagrees. Initially, the Court believes that *Barney* and its progeny make it "sufficiently clear" that any reasonable correctional officer would know that he could not, without consent, (1) use threats to force an inmate to expose her breasts and then touch them; (2) repeatedly, forcefully press his genitals into an inmate's buttocks; or (3) forcibly grope an inmate's crotch for approximately three minutes. Indeed, the Tenth Circuit in both *Gonzales* and *Tafoya* described the assaults at issue as "sexual[] assault[s]" without providing further details about the specifics of the assaults. *Gonzales*, 403 F.3d at 1181; *Tafoya*, 516 F.3d at 914, 915. In both cases, the Tenth Circuit found that sexual assault against an inmate violated the Eighth Amendment without analyzing the specifics of the assault—including whether the sexual assault met

each element of the crime of rape. *Gonzales*, 403 F.3d at 1186; *Tafoya*, 516 F.3d at 916.

Even if *Barney* and its progeny did not put the issue beyond dispute, the Court would still find that Defendant Bradley was not entitled to qualified immunity. "This is because, given the egregiousness of [Defendant Bradley's] violation of [Plaintiff's] personal security and bodily integrity, the right here is so 'obvious' that it could be deemed clearly established even without materially similar cases." *Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018); *see also Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) ("When the public official's conduct is egregious, even a general precedent would apply with obvious clarity. After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing" (citations and quotations omitted)). If the allegations in the Amended Complaint are true, and at this stage, the Court must assume that they are, Defendant Bradley committed felonious sexual assault against Plaintiff. If true, Defendant Bradley is both plainly incompetent and in knowing violation of the law. He is therefore not entitled to qualified immunity. *Aldaba*, 844 F.3d at 877 ("Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.").

*Joseph v. United States Federal Bureau of Prisons*, relied upon by Defendant Bradley, is readily distinguishable.[6] 232 F.3d 901, 2000 WL 1532783 (10th Cir. 2000)

---

[6] Defendant Bradley also cites cases from this District that analyze sexual misconduct by guards against inmates. [#39 at 8-10] The Court is not bound by those decisions and, to the extent they stand for the proposition that conduct such as that alleged to have been committed by Defendant Bradley does not constitute the violation of a clearly established right under the Eighth Amendment, this Court respectfully disagrees.

(unpublished table decision).  There, the Tenth Circuit held that an inmate did not state an Eighth Amendment claim when he alleged that a female secretary at the prison touched him suggestively several times and exposed her breasts to him.  *Id.* at *1-2.  In reaching this conclusion, the Tenth Circuit reasoned that the objective component of a deliberate indifference claim required the inmate to allege abuse or harassment that caused "pain," and that the inmate had failed to do so.  *Id.*  But, as the Tenth Circuit recognized in 2013, well before Defendant Bradley's alleged misconduct, this "focus on objective pain may not be consistent with the Supreme Court's more recent emphasis on force, rather than injury or harm."  *Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1124 (10th Cir. 2013) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).  In any event, unlike the allegations in *Joseph*, Plaintiff has clearly alleged that Defendant Bradley used physical force against her.

The Court thus finds that the law was clearly established that Defendant Bradley's alleged conduct violated Plaintiff's clearly established Eighth Amendment right to personal security and bodily integrity.  Accordingly, the Bradley Motion is DENIED to the extent it seeks to dismiss Claim One.

### b.  The Supervisory Defendants

### i.  The Alleged Constitutional Violation

The Supervisory Defendants argue that Plaintiff has failed to plausibly plead their personal participation in the alleged constitutional violation.  Section 1983 does not "authorize liability under a theory of respondeat superior."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quotation omitted).  Instead, personal involvement is required.  K*eith v. Koerner (Keith II)*, 843 F.3d 833, 838 (10th

Cir. 2016).  To establish personal involvement, Plaintiff must show an "affirmative link" between the Supervisory Defendants and Defendant Bradley's sexual assaults.  *Id.* This "affirmative link" requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind.  *Id.*

The Court finds that Plaintiff has alleged sufficient facts to plausibly plead the affirmative link necessary to establish the Supervisory Defendants' participation in the constitutional deprivation.  Plaintiff alleges that Defendant Johnson hires jail personnel and establishes the operating procedures at DWCF, including setting internal security procedures and ensuring that employees are properly trained.  [*Id.* at ¶ 10]  Plaintiff alleges that Defendant Jaques oversaw DWCF operations, including hiring, training, and supervision.  [*Id.* at ¶ 11]  The Amended Complaint thus plausibly alleges that the Supervisory Defendants could implement procedures and safeguards to protect Plaintiff and other inmates from sexual abuse by guards, including through the firing of guards who pose a specific risk to inmates.

The Amended Complaint further plausibly alleges that the Supervisory Defendants were aware of both the general risk of sexual abuse by guards on inmates at DWCF and the specific risk posed by Defendant Bradley.  In 2009, DOC officials settled a lawsuit in which a DWCF inmate alleged that a guard raped her after repeatedly coercing her into performing sexual acts.  [*Id.* at ¶¶ 89, 91]  The guard had a history of engaging in sexual misconduct with female inmates, a fact allegedly well known to DWCF officials.  [*Id.* at ¶ 89]

Moreover, in 2011 and 2012, DWCF had the highest rate in the country of alleged sexual assault or misconduct by correctional facility staff members against

inmates, with an estimated 10.7 percent of DWCF inmates claiming that they were victims of sexual assault or misconduct by staff members. [*Id.* at ¶ 92] Of all DWCF inmates subjected to sexual misconduct by staff, 7.3 percent reported that they had been physically coerced or threatened with physical force, ten times higher than the national average. [*Id.*] The Amended Complaint alleges that prison officials, including the Supervisory Defendants, knew about the ongoing and pervasive sexual misconduct and abuse at DWCF through receipt of letters, grievances, formal complaints, and civil lawsuits. [*Id.* at ¶ 90]

With respect to Defendant Bradley, the Supervisory Defendants knew that Defendant Bradley had been engaged in sexual misconduct with inmates. [*Id.* at ¶¶ 22-23, 94] Witnesses had observed Defendant Bradley sexually harassing female inmates as early as 2008, and DOC officials had received numerous complaints about Defendant Bradley sexually harassing or assaulting inmates. [*Id.*] Though DOC had previously investigated Defendant Bradley for such conduct, DOC officials failed to take any significant action against him. [*Id.* at ¶¶ 23, 94]

Thus, the Amended Complaint plausibly alleges that the Supervisory Defendants knew that inmates were being sexually assaulted by guards including Defendant Bradley. The Amended Complaint further plausibly alleges that the Supervisory Defendants were in a position to take measures to protect inmates, yet they failed to do so. Such allegations plausibly plead the Supervisory Defendants' personal participation.[7] *See Keith v. Koerner (Keith I)*, 707 F.3d 1185, 1188-90 (10th Cir. 2013)

---

[7] As a subsection of their personal participation argument, the Supervisory Defendants briefly argue that Plaintiff failed to allege deliberate indifference. [#40 at 11-12] It is unclear whether the Supervisory Defendants intended for this argument to apply to

(personal participation plausibly pled against supervisory defendant where defendant knew of prior incidences of sexual abuse by prison guards yet failed to take corrective measures); *Gonzales*, 403 F.3d at 1186-87 (same). Accordingly, Plaintiff has adequately alleged an Eighth Amendment claim against the Supervisory Defendants.

### ii. Whether the Law Was Clearly Established

The Court further concludes that the law was clearly established such that every reasonable official in the Supervisory Defendants' position would have known that the alleged inaction of the Supervisory Defendants violated the law. Since at least the *Gonzales* opinion in 2005, the law in this Circuit has been firmly established that a prison administrator aware of widespread sexual abuse by guards within his prison must act to prevent such abuse. 403 F.3d at 1186-87; *see also Poore v. Glanz*, 724 F. App'x 635, 640-43 (10th Cir. 2018) (finding that law was clearly established in 2010 that administrator aware of one prior instance of sexual misconduct by jail staff, coupled with other violations of prison policies, could be held liable for subsequent sexual abuse by a prison guard). The Court thus finds that Plaintiff has alleged sufficient facts to both state a claim against the Supervisory Defendants and overcome the Supervisory Defendants' qualified immunity defense. Accordingly, the State's Motion is DENIED to the extent it seeks to dismiss Claim One.

---

Claim One. Regardless, a jail administrator's knowledge of widespread sexual abuse of inmates, coupled with a failure to act, plausibly alleges the administrator's deliberate indifference. *Tafoya*, 516 F.3d 912, 917-21 (10th Cir. 2008); *Gonzalez v. Martinez*, 403 F.3d 1179, 1186-87 (10th Cir. 2005).

### 2. Claim Two – Invasion of Bodily Integrity in Violation of the Fourteenth Amendment's Right to Substantive Due Process

Claim Two alleges a Fourteenth Amendment substantive due process claim against Defendants Bradley, Johnson, and Jaques. [#22 at ¶¶ 117-31] According to the Amended Complaint, these Defendants violated Plaintiff's substantive due process rights by invading her bodily integrity. [*Id.*] Each Defendant argues that this substantive due process claim should be dismissed because the claim arises under the Eighth Amendment rather than the Fourteenth Amendment. [#39 at 10-12; #40 at 6-7] Alternatively, each Defendant asserts a qualified immunity defense. [#39 at 12-13; #40 at 15-18] Because the Court agrees that the Eighth Amendment governs the alleged misconduct alleged in Plaintiff's substantive due process claim, the Court will dismiss Claim Two.

In *Graham v. Connor*, the Supreme Court held that when government conduct is constrained by "an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. 386, 395 (1989). The *Graham* Court reasoned that "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Id.* at 395 n.10. As a result, "claims of excessive force against convicted prisoners should be analyzed under the Eighth and not the Fourteenth Amendment." *Berry v. City of Muskogee*, 900 F.2d 1489, 1494 (10th Cir. 1990).

Plaintiff contends that "[t]he Eighth Amendment and the substantive due process clause of the Fourteenth Amendment are distinct bases for finding state liability for different types of injury" and argues that her Eighth Amendment claims are "grounded in

the unnecessary and wanton infliction of pain in violation of the prohibition against cruel and unusual punishment," whereas her substantive due process claim "centers on the more narrow fact that Defendant Bradley's sexual assault constituted a violation of her liberty interest to be free from arbitrary state intrusions into her bodily integrity." [#51 at 24 (quotation omitted)] Contrary to this argument, however, the Tenth Circuit has consistently evaluated the violation of a prisoner's right to "bodily integrity" resulting from sexual assault under the Eighth Amendment. *See, e.g.*, *Smith*, 339 F.3d at 1212 (noting that "[t]he right to be secure in one's bodily integrity includes the right to be free from sexual abuse" and finding that "allegations of sexual abuse can satisfy the objective component of an Eighth Amendment [claim]"); *Barney*, 143 F.3d at 1310 ("expressly acknowledg[ing] that an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards" and that the "plaintiffs' deprivations resulting from [ ] sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment" (quotation omitted)). Moreover, although not in the context of sexual assault, the Tenth Circuit has expressly acknowledged that "the safety and *bodily integrity* of convicted prisoners implicates both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's substantive protection against state deprivation of life and liberty without due process of law" and concluded that the "the legal standards under the two amendments are identical" and should be evaluated under the Eighth Amendment. *Berry*, 900 F.2d at 1494 n.6 (emphasis added). Although Plaintiff argues for a different

result in cases involving sexual assault, she provides no justification—or legal authority—for that position.[8]

Even if Plaintiff were correct that "the protection against sexual assault as an arbitrary intrusion into a prisoner's bodily integrity is a separate right" than the Eighth Amendment right to be free from cruel and unusual punishment and thus should be analyzed under a separate legal standard, Defendants would be entitled to qualified immunity on the substantive due process claim. Plaintiff has failed to identify (and this Court was unable to find) any Supreme Court or Tenth Circuit authority that clearly establishes a prisoner's substantive due process right to bodily integrity separate and apart from the prisoner's Eighth Amendment rights.

The Court thus finds that Plaintiff's bodily integrity claim is governed by the Eighth Amendment, and that her Fourteenth Amendment substantive due process claim should be dismissed.[9]  *See Climo v. Rustin*, No. 11-1339, 2012 WL 3779178, at *5

---

[8] Plaintiff quotes the Eighth Circuit's decision in *Rogers v. City of Little Rock* for the proposition that "[t]his case is not about excessive force, but rather about nonconsensual violation of intimate bodily integrity which is protected by substantive due process. No degree of sexual assault by a police officer acting under color of law could ever be proper." 152 F.3d 790, 796 (8th Cir. 1998). *Rogers* is readily distinguishable and, regardless, does not provide any support for Plaintiff's contention that she should be permitted to proceed with both an Eighth Amendment claim *and* a substantive due process claim. In *Rogers*, the plaintiff was raped by a police officer following a traffic stop, "after [the plaintiff] had been told she could go and [the officer] had followed her home, far from the scene of the traffic stop and separated in time from it." *Id.* Under those circumstances, the Eighth Circuit concluded that the plaintiff's claim should be construed as duplicative of a substantive due process claim *instead of* one arising under the Fourth Amendment. *Id.* at 797.

[9] Plaintiff cites to *Hall v. Zavaras* in which a Court in this District denied a motion to dismiss an inmate's Fourteenth Amendment substantive due process claim related to a sexual assault as duplicative of the inmate's Eighth Amendment claim. No. 08-cv-00999-DME, 2008 WL 5044553, at *2-3 (D. Colo. Aug. 30, 2018). The defendants in *Hall*, however, "offer[ed] no explanation of *why* [plaintiff's] second, third, and fourth claims [we]re 'covered by the specific provisions' of the Eighth Amendment" and, as a

(W.D. Pa. Aug. 31, 2012) (dismissing inmate's Fourteenth Amendment claim arising out of a sexual assault because the Eighth Amendment applied); *Fogleman v. Cty. of Los Angeles*, No. CV 10-6793 GAF (SHx), 2011 WL 13217479, at *4 (C.D. Cal. April 22, 2011) (same); *Fleetwood v. Werholtz*, No. 10-2480-RDR, 2011 WL 1527261, at *9 (D. Kan. April 20, 2011) (same). Accordingly, the Motions are GRANTED to the extent they seek dismissal of Plaintiff's Second Claim.

### 3. Claim Three - State Created Danger in Violation of the Fourteenth Amendment's Right to Substantive Due Process

Claim Three alleges a Fourteenth Amendment substantive due process claim against Defendants Jaques, Smith, Avant, and Lake (collectively, the "Wire Operation Defendants"). [#22 at ¶¶ 132-46] Claim Three is premised on a state-created danger theory of liability. [*Id.*] In her Response, Plaintiff concedes "that she has not pleaded a state-created danger claim because the state-created danger doctrine applies only 'when a state actor affirmatively acts to create, or increase[ ] a plaintiff's vulnerability to, danger from private violence,' and 'does not apply when the injury occurs due to the action of another state actor.'" [#51 at 18 n.7 (quoting *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 (10th Cir. 2009))]

Despite this concession, Plaintiff asks the Court to construe Claim Three as an Eighth Amendment failure to protect claim. [*Id.*] The entirety of Plaintiff's argument in support of this position consists of the following two sentences:

> [U]nder Fed. R. Civ. P. 8(e) courts must construe complaints "so as to do justice," which requires that courts "not rely solely on labels in a complaint, but that they "probe deeper and examine the substance" of the complaints

result, neither *Graham* nor *Berry* was discussed in the opinion. *Id.* (emphasis in original). Here, by contrast, Defendants have persuasively explained why Plaintiff's substantive due process claim is covered by the Eighth Amendment.

[sic] allegations. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107-08 (10th Cir. 2009) (citation omitted). Because the substance of the allegations against the Wire Operation Defendants show that they disregarded a known risk to [Plaintiff's] safety by setting her up to be sexually assaulted by Defendant Bradley, they are liable for failing to protect [Plaintiff] from harm under the Eighth Amendment's prohibition against deliberate indifference to an inmate's health and safety.

[*Id.*]

The Court finds this argument—relegated to a footnote—insufficient to avoid dismissal of Claim Three. Although the Court will, in appropriate circumstances, look past labels to properly construe a claim improperly identified, this is not such a case. There is no indication that Plaintiff—represented by competent counsel—merely mislabeled her intended claim.[10] Instead, realizing that the claim originally asserted is not legally viable, Plaintiff improperly attempts to use her response to the Motions to add an entirely new claim. *See, e.g.*, *Mattson v. Napolitano*, No. 09-cv-02024-PAB-BNB, 2010 WL 11553697, at *2 (D. Colo. Sept. 15, 2010) (holding that Plaintiff may not amend complaint through response to motion to dismiss); *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss."). To the extent Plaintiff wishes to add an Eighth Amendment failure to protect claim against the Wire Operation Defendants, she must file a motion for leave to amend her complaint.[11]

---

[10] Given that Claim Five of the Amended Complaint asserts an Eighth Amendment failure to protect claim against other defendants, it is clear Plaintiff was aware of the distinction between Fourteenth Amendment state-created danger claims and Eighth Amendment failure to protect claims and made a conscious decision to assert only the Fourteenth Amendment state-created danger claim against the Wire Operation Defendants.

[11] The Court observes that Defendants do not appear to have met and conferred with Plaintiff prior to filing their Motions, as encouraged by the version of this Court's Civil Practice Standards in place at the time the Motions were filed. *See* Civil Practice Standards, § V ("The parties should confer prior to the filing of any motion where the

Even if the Court were willing to entertain Plaintiff's invitation to construe Plaintiff's Fourteenth Amendment state-created danger claim as an Eighth Amendment failure to protect claim, the Court would dismiss the claim. Defendants' Motions raise a qualified immunity defense with regard to all the claims asserted by Plaintiff. As noted above, once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn*, 780 F.3d at 1004 (quotation omitted). Plaintiff has failed to sustain her burden to overcome the qualified immunity defense. Plaintiff makes no attempt to identify a clearly established right under the Eighth Amendment violated by the Wire Operation Defendants.[12] "On this basis alone, [the Court] hold[s] that [Plaintiff] has not properly laid the groundwork to defeat [Defendants'] assertion of qualified immunity." *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).

Accordingly, the State's Motion is GRANTED to the extent it seeks dismissal of Claim Three.

---

alleged deficiency is correctable by amendment . . . and should exercise their best efforts to stipulate to appropriate amendments."). Effective November 1, 2018, the Court has revised its Practice Standards to require conferral. Conferral in this case— where Plaintiff conceded multiple points raised in the Motions—likely would have conserved the parties' and the Court's resources.

[12] "[I]t is not the Court's obligation to create legal arguments for [the parties]." *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, No. 13-CV-01812-RM-CBS, 2016 WL 1377165, at *13 (D. Colo. Apr. 7, 2016); *see also Goodwin v. Bruggeman-Hatch*, No. 13-CV-02973-REB-MEH, 2014 WL 4723916, at *2 (D. Colo. Sept. 22, 2014) (finding that "an issue that is not raised in response to the apposite motions to dismiss or otherwise brought to the attention of the magistrate judge is waived").

### 4. Claim Four – Retaliation in Violation of the First Amendment

Claim Four alleges a First Amendment retaliation claim against the Wire Operation Defendants. [#22 at ¶¶ 147-56] According to the Amended Complaint, Plaintiff exercised her First Amendment rights by complaining to Defendant Smith about Defendant Bradley's sexual misconduct against her. [*Id.* at ¶ 149] Plaintiff maintains that the Wire Operation Defendants retaliated against her by using her as an informant in the undercover wire operation and thereby placing her in substantial danger of being sexually assaulted by Defendant Bradley. [*Id.* at ¶¶ 151, 153] The Wire Operation Defendants argue that Plaintiff has failed plausibly to allege such a claim and that, in any event, they are entitled to qualified immunity. [#40 at 13-18]

"It is well-settled that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quotation omitted). "Nor may prison officials retaliate against prisoners for filing administrative grievances." *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Nevertheless, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison" and "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that

would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Defendants challenge the second and third elements of Plaintiff's retaliation claim. Defendants argue that Plaintiff fails sufficiently to allege either that "[the Wire Operation] Defendants' actions caused her to suffer injury" or that the Wire Operation Defendants "intended to retaliate against [Plaintiff] for the purpose of dissuading her (or others) from filing a complaint." [#40 at 14] The Court agrees that Plaintiff's Amended Complaint fails sufficiently to allege the third element of a First Amendment retaliation claim.

The third element "requires the inmate to prove that *but for the retaliatory motive*, the incidents to which he refers . . . would not have taken place." *Brooks v. Gabriel*, 738 F. App'x 927, 932 (10th Cir. 2018) (emphasis added) (quotation omitted). Here, the Amended Complaint fails sufficiently to allege that the Wire Operation Defendants had a retaliatory motive. The Amended Complaint alleges that the Wire Operation Defendants told Plaintiff that they wanted her to wear a wire so that they could obtain "hard evidence" of Defendant Bradley's misconduct to "sav[e] countless other women from Defendant Bradley's abuse and harassment." [*Id.* at ¶¶ 50, 53] The Amended Complaint fails to allege specific, objective facts from which it could be inferred that the Wire Operation Defendants' proffered reasons were pretextual and that the Wire Operation Defendants were truly acting pursuant to a retaliatory motive. *See Banks v. Katzenmeyer*, 645 F. App'x 770, 773 (10th Cir. 2016) (finding that complaint "failed to allege specific, objective facts" from which pretext could be inferred). The Amended

Complaint's conclusory statement that Plaintiff's "protected speech was a motivating and substantial factor" in engaging Plaintiff in the wire operation [#22 at ¶ 153] is insufficient to allege a retaliatory motive. *Id.* at 773 n.2 (finding statements that prison therapists' motives were "fabricated" or "bogus" insufficient to allege retaliatory motive); *Peterson*, 149 F.3d at 1144 ("An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." (emphasis in original) (quotation omitted)).   Accordingly, the State's Motion is GRANTED to the extent it seeks dismissal of Claim Four.

### 5. Claim Five – Failure to Protect from Cruel and Unusual Punishment in Violation of the Eighth Amendment

Claim Five alleges an Eighth Amendment failure to protect claim against Defendants Urich and Wang.  [#22 at ¶¶ 157-68]  Claim Five alleges that Defendants Urich and Wang knew that Defendant Bradley posed an excessive risk to Plaintiff's safety yet did nothing to protect her.  [*Id.*]  Defendants Urich and Wang argue that Plaintiff has failed to plausibly allege that they participated in the constitutional violation and that they are entitled to qualified immunity.  [#40 at 8-12, 15-18]  The Court addresses each argument below.

### a.  The Alleged Violation of the Eighth Amendment

"[A] prison guard's failure to take reasonable steps to protect an inmate from a known risk of sexual abuse by another prison guard can be a violation of the Eighth Amendment." *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015) (footnote omitted). But, "[b]ecause only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, a prison official must act with deliberate indifference to inmate health or safety to violate the inmate's constitutional rights." *Id.* (quotation omitted).

Deliberate indifference has both an objective and subjective component.  *Id.*  A plaintiff can meet her burden under the objective component by showing the harm she suffered was sufficiently serious.  *Id.*  Defendants Urich and Wang do not appear to challenge the objective component of Plaintiff's deliberate indifference claim.  [#40 at 9-12 (focusing on Defendants' state of mind)]

"To prevail on the subjective component, the prisoner must show that the defendant[] knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Castillo*, 790 F.3d at 1021 (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)).  The Amended Complaint alleges that Plaintiff "repeatedly complained to [Defendant] Wang and [Defendant] Urich that Defendant Bradley was sexually harassing and scaring her."  [#22 at ¶ 43]  In response, Defendants Wang and Urich told Plaintiff "that's how he is" and that she should be "glad" that Defendant Bradley "like[d] her."  [*Id.* at ¶ 44]  After an occasion in which Plaintiff complained about Defendant Bradley's actions, Defendant Wang told Plaintiff to go put Defendant Bradley in a good mood.  [*Id.*]  Defendant Wang also personally observed Defendant Bradley tell Plaintiff to masturbate for him and warn her that, if she did not, he would write her up for disobeying a lawful order.  [*Id.* at ¶ 45]  In addition to these specific facts, the Amended Complaint also generally asserts that Defendants Wang and Urich knew of the risk that Defendant Bradley posed to Plaintiff.  [*Id.* at ¶ 163]  Despite being aware of these facts, neither Defendant Wang nor Defendant Urich took any actions to protect Plaintiff.  [*Id.* at ¶¶ 44, 46, 162]

The Court finds these allegations sufficient to allege the subjective component of a deliberate indifference claim.  Plaintiff told Defendants Wang and Urich that she was

afraid of Defendant Bradley and provided a valid basis for that fear. Defendants Wang and Urich did nothing, and Plaintiff was subsequently sexually assaulted by Defendant Bradley. These facts adequately allege an Eighth Amendment claim against Defendants Wang and Urich. *See Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (inmate plausibly pled Eighth Amendment claim against prison officials where prison officials were aware of inmate's fear of retaliation by members of the Native American callout but did nothing and inmate was subsequently beaten by two members of the callout).

### b. Whether the Law Was Clearly Established

The Court further concludes that the law was clearly established such that every reasonable official in the position of Defendants Urich and Wang would have known that they were violating the law. Since at least 2015, the law in the Tenth Circuit has been clear that "a prison guard's failure to take reasonable steps to protect an inmate from a known risk of sexual abuse by another prison guard can be a violation of the Eighth Amendment." *Castillo*, 790 F.3d at 1020. Here, Defendants Urich and Wang were aware of the risk posed by Defendant Bradley to Plaintiff, yet they did nothing to protect Plaintiff. Accordingly, the allegations are sufficient to assert a violation of clearly established law. Therefore, the State's Motion is DENIED to the extent it seeks dismissal of Claim Five.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that**:**

(1)     Defendant Bradley's Motion to Dismiss [#39] is **GRANTED IN PART** and **DENIED IN PART**;

(2)     The State's Motion to Dismiss [#40] is **GRANTED IN PART** and **DENIED IN PART**;

(3)     The Motions are **GRANTED** to the extent they seek dismissal of the Claims against the Defendants in their official capacities and all claims asserted against Defendants in their official capacities are hereby **DISMISSED WITHOUT PREJUDICE** from this action;

(4)     The Motions are **GRANTED** to the extent they seek dismissal of Claims Two, Three, and Four, and those claims are hereby **DISMISSED** from this action;

(5)     The Motions are **DENIED** to the extent they seek dismissal of Claim One, and Claim One shall proceed against Defendants Bradley, Johnson, and Jaques in their individual capacities;

(6)     The State's Motion is **DENIED** to the extent it seeks dismissal of Claim Five, and Claim Five shall proceed against Defendants Urich and Wang in their individual capacities;

(7)     Defendants Raemisch, Avant, Smith, and Lake are hereby **DISMISSED** as Defendants from this action and their names shall be removed from the case caption; and

(8)     A scheduling conference is set for February 28, 2019, at 9:00 a.m., and the parties shall submit a joint proposed scheduling order to the Court no later than February 21, 2019.

DATED:  February 9, 2019                          BY THE COURT:

                                                  s/Scott T. Varholak
                                                  United States Magistrate Judge